| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:19-CR-00254 (KAD) |
| v. | |
| MICHELLE GSCHLECHT | April 2, 2020 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 21)**

Kari A. Dooley, United States District Judge:

Defendant Michelle Lynn Gschlecht ("Gschlecht" or the "Defendant") was charged by indictment dated October 9, 2019 with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (ECF No. 1.) Gschlecht filed a motion to suppress pursuant to Fed. R. Crim. P. 12(b)(3)(C), seeking to suppress evidence obtained pursuant to a warrantless search and seizure of a smartphone she possessed, including images and/or video files containing alleged child pornography. Gschlecht seeks an evidentiary hearing on her motion. The Government opposes the motion to suppress on the grounds that the warrantless seizure and search of the phone was permissible under the circumstances. The Government also contends that an evidentiary hearing is not necessary as there are no factual disputes that need to be resolved in order to decide the motion to suppress. For the reasons that follow, the Court concludes that no evidentiary hearing is required and the motion to suppress is DENIED.

**Background**

On July 14, 2015, Gschlecht was sentenced to a ten-year term of imprisonment suspended after five years, followed by ten years of probation, following her conviction for first degree

possession of child pornography in Connecticut Superior Court. (*See* Order of Probation, Def.'s. Ex. 1, ECF No. 22-1.) Among the general conditions of probation imposed on Gschlecht was one requiring that she "[s]ubmit to a search of [her] person, possessions, vehicle or residence when the Probation Officer has a reasonable suspicion to do so." (Conditions of Probation No. 12, Def.'s Ex. 1.) Gschlecht's Order of Probation further requires that Gschlecht follow certain special conditions, including that she "not have any unauthorized access to the internet and comply with the probation Computer Access Agreement." (Court Ordered Special Conditions No. 6, Def.'s Ex. 1.) The Sex Offender Conditions applicable to Gschlecht additionally require, *inter alia*, that she "not possess a camera, camera phone, camcorder, videocassette, DVD or any device that can record and/or play back visual images without Probation Officer approval," and that she execute a Computer Access Agreement "prior to using any computer while on probation" as well as "submit to an examination and search of [her] computer or other similar equipment to verify it is not utilized in violation of probation and/or treatment conditions." (Sex Offender Conditions of Probation, Nos. 22, 24, Def.'s Ex. 1.)

On March 12, 2019, Gschlecht signed her conditions of probation, indicating that she understood and would abide by these and her other probation conditions. On that same day Gschlecht also signed the Computer Access Agreement, which provides in relevant part that she "will not possess any sexually explicit or sexually stimulating material in any manner on disk, in computer hard drive, or any other electronic storage medium that can hold this type of material," that she "agree[s] and voluntarily consent[s] to having [her] computer examined and/or searched at any time, announced or unannounced, by Probation or its agent to verify compliance with the special conditions of [her] probation," and that she "will use the Internet according to the schedule approved by [her] Probation Officer." (Computer Access Agreement Condition Nos. 8, 14, 18, Def.'s Ex. 2, ECF No. 22-1.) The Computer Access Agreement further provides the probation

office with authority to confiscate Gschlecht's "computer or related equipment" if monitoring revealed Gschlecht to have used such a computer or equipment in a manner that violated her conditions of probation, and to turn over data obtained therefrom to law enforcement if such data constituted evidence of a crime. (*Id*. Condition No. 15.) Gschlecht began serving her term of probation on April 15, 2019.

According to an investigative report prepared by the United States Department of Homeland Security ("DHS"), Probation Officers Chris Caporale ("Officer Caporale") and Patricia Belin ("Officer Belin" and, collectively, the "Probation Officers") from the Connecticut Adult Probation Sex Offender Unit were traveling in the vicinity of the New Haven Green on July 31, 2019 when they observed Gschlecht sitting with an unknown male and holding a smartphone.[1] (DHS Report, Def.'s Ex. 3, ECF No. 22-1.) Gschlecht did not have permission to possess a smartphone. (*Id*.) Officer Caporale reportedly approached Gschlecht and asked her to hand over the phone; a brief examination of its contents revealed suspected videos and images of child pornography. (*Id*.) Officer Caporale later recalled that during this interaction Gschlecht initially claimed that the phone belonged to the male with whom she was sitting, who denied such ownership and responded that the phone was Gschlecht's. (*Id*.) Eventually, however, Gschlecht admitted that the phone was hers. (*Id*.) According to the Government a subsequent forensic analysis of the smartphone disclosed 67 images and 107 thumbnails of suspected child pornography. (Gov't's Mem. at 6, ECF No. 24.)

---

[1] For purposes of the motion to suppress only, the Defendant accepts this report as accurate but reserves the right to challenge these facts in the future. The DHS Report refers to Gschlecht as "he" but as explained in the Defendant's memorandum, Gschlecht is a transgender woman and uses female pronounces. (Def.'s Mem. at 3 n.1, ECF No. 22.)

**Discussion**

Gschlecht now seeks to suppress the contents of the seized smartphone, asserting that the phone was seized and searched in violation of the Fourth Amendment. The Defendant's motion is premised on the theory that the search was purportedly conducted pursuant to the Computer Access Agreement signed by the Defendant and included among her conditions of probation. Specifically, she asserts that the Computer Access Agreement, which requires that she "agree and voluntarily consent to having [her] computer examined and/or searched at any time, announced or unannounced, by Probation or its agent to verify compliance with the special conditions of [her] probation" (Condition No. 14, Def.'s Ex. 2), is an unenforceable contract of adhesion. Second, she argues that even if enforceable, the Computer Access Agreement does not define the term "computer" in a way that encompasses Gschlecht's smartphone. And lastly, she contends that the search provision in the Computer Access Agreement is unconstitutional to the extent that it permits suspicionless searches.

In response, the Government asserts that the search was supported by reasonable suspicion and therefore permissible regardless of the enforceability or application of the Computer Access Agreement. Alternatively, the Government contends that the Computer Access Agreement is not unconstitutional, is enforceable, applies to the smartphone at issue, and provides valid consent for the search. In reply, the Defendant seeks an evidentiary hearing on the issue of whether the Probation Officers had reasonable suspicion, separate and distinct from any claimed authority to search pursuant to the Computer Access Agreement.

Because the Court concludes that the Probation Officers had reasonable suspicion to search Gschlecht's phone, the Court need not decide the issues raised regarding the constitutionality, enforceability, or application of the Computer Access Agreement. Further, because the Court's determination that the Officers had reasonable suspicion to search the phone derives from the

4

limited facts accepted by the Defendant for purposes of this motion, an evidentiary hearing is not necessary.[2]

**Standard of Review**

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (quoting U.S. Const. amend. IV). "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "In most cases, reasonableness requires a warrant and probable cause." *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). There are exceptions to the warrant requirement, however, and "[o]nce a defendant with a reasonable expectation of privacy in the area searched challenges a warrantless search as unreasonable under the Fourth Amendment, the burden is on the government to demonstrate that the search was within one of the recognized exceptions." *United States v. Peña Ontiveros*, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 Fed. App'x 441 (2d Cir. 2011).

There are also exceptions to the probable cause requirement. The Supreme Court has "demarcated certain areas in which a lesser—or even nonexistent—level of individualized

---

[2] As previously noted, for purposes of the motion to suppress only, the Defendant accepts the law enforcement narrative set forth above. In reply, the Defendant requests an evidentiary hearing in response to a footnote in the Government's brief stating that "Ms. Gschlecht's Probation Officer may have possessed additional information underlying the claimed suspicion." (Def.'s Reply at 3.) However, a hearing is not necessary because the facts upon which the Court renders its decision are not in dispute, and additional facts are not required to determine whether there was reasonable suspicion for the search. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that **contested issues of fact** going to the validity of the search are in question." *United States v. Getto*, 729 F.3d 221, 227 n.6 (2d Cir. 2013) (quoting *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 165 (2d Cir. 2008)) (emphasis added); *see also United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (upholding denial of evidentiary hearing where "defendant failed to show that he could challenge the search under the Fourth Amendment, even assuming [the court] credited the facts asserted in his counsel's affirmation.").

suspicion is sufficient to render a search constitutional" in the absence of a warrant. *Lifshitz*, 369 F.3d at 178. One such area concerns the search of persons who are on probation. Individuals on probation are subject to restrictions on their liberty that are driven by the legitimate governmental interests in preventing recidivism and promoting rehabilitation. *See United States v. Knights*, 534 U.S. 112, 119–21 (2001). Accordingly, "[w]hen a[ probation] officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id*. at 121.[3]

**The Probation Officers' Search Was Supported by Reasonable Suspicion**

As noted above, Gschlecht's conditions of probation require that she "[s]ubmit to a search of [her] person, possessions, vehicle or residence when the Probation Officer has a reasonable suspicion to do so." (Conditions of Probation No. 12.) "Reasonable suspicion is less than a 'fair probability' of wrongdoing, and 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *United States v. Jackson*, No. 15-CR-106 (JPO), 2015 WL 4557401, at *8 (S.D.N.Y. July 29, 2015) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) and *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008)). "While the concepts of 'reasonable suspicion' and 'probable cause' are 'fluid' and not susceptible of precise definition, 'the principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts amount to

---

[3] In *Knights* the Supreme Court declined to consider whether the broad search condition itself, which sanctioned even suspicionless searches, was constitutional in light of the Petitioner's concession that the search of his apartment was supported by reasonable suspicion. *See* 534 U.S. at 120 n.6, 122. The Second Circuit has thus observed that *Knights* leaves open the possibility that some standard less than reasonable suspicion may suffice for probationary searches. *See Lifshitz*, 369 F.3d at 181; *see also United States v. Chirino*, 483 F.3d 141, 150 (2d Cir. 2007) (McLoughlin, *J*., concurring) ("I write separately only to note my continuing belief that something less than reasonable suspicion may support a search of the dwelling of a felon on probation."). Because the Court concludes that the search of Gschlecht's cell phone was supported by reasonable suspicion, as discussed, *infra*, the Court does not address or apply a lesser standard.

reasonable suspicion or to probable cause.'" *Lifshitz*, 369 F.3d at 188 (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996) (ellipsis and brackets omitted)). "Although the standard is 'not high,' officers 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Jackson*, 2015 WL 4557401, at *8 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)) (internal citations omitted). "Suspicion, to be reasonable, therefore necessitates not only a focus upon a particular person, but also concentration on a specific series of events." *Lifshitz*, 369 F.3d at 188. "The relevant inquiry is not whether particular conduct reflects innocent or guilty behavior, but rather whether certain types of noncriminal acts are suspicious." *United States v. Harrison*, No. 15-CR-00389 (SJ) (VMS), 2016 WL 11481716, at *5 (E.D.N.Y. Feb. 1, 2016), *report and recommendation adopted*, 2016 WL 1070816 (E.D.N.Y. Mar. 14, 2016) (quotation marks and citation omitted). "The court must view the circumstances through the eyes of a reasonable and cautious probation officer on the scene." *Id*. (quotation marks, brackets, and citations omitted).

Viewing the events through the eyes of Officers Caporale and Belin, the Court easily concludes that they had reasonable suspicion to seize and search Gschlecht's smartphone. To start, the Probation Officers observed Gschlecht in possession of an unauthorized smartphone. This alone is compelling evidence that Gschlecht may have violated one or more conditions of her probation, including that she: (1) not have unauthorized Internet access; and (2) not possess a camera, camera phone, or other device that could record and/or play back visual images absent authorization. Smartphones, now about as commonplace as any modern convenience, serve a multitude of functions, many of which require and depend on a connection to the Internet. And it is equally commonplace, if not more obvious, that smartphones are used as cameras and that they store digital images. Given the Defendant's restrictions in this regard, her unauthorized possession

of a smartphone was suspicious, and the Probation Officers accordingly had more than reasonable suspicion that she had violated the conditions of her probation.

The Probation Officers were further aware that Gschlecht was on probation for possession of child pornography. Considering that a smartphone is often used as an instrumentality of the very offense for which the Defendant was on probation, this knowledge rendered Gschlecht's possession of such a device even more suspicious. *See, e.g.*, Warren Binford *et al.*, *Beyond Paroline: Ensuring Meaningful Remedies for Child Pornography Victims at Home and Abroad*, 35 Child. Legal Rts. J. 117, 124 (2015) (explaining that "[d]evices such as smartphones allow offenders to access child pornography images easily and on-the-go, as well as create and distribute the sex abuse images relatively simply and quickly from a technological perspective"). While it is true that "the criminal status of the probationer cannot, viewed on its own, be sufficient to support a determination that 'reasonable suspicion' exists," *Lifshitz*, 369 F.3d at 188, consideration of one's criminal history in combination with other pertinent factors can legitimately sustain reasonable suspicion, *see*, *e.g.*, *United States v. Chandler*, No. 15-CR-131 (JMA) (SIL), 2016 WL 4076875, at *2 (E.D.N.Y. Aug. 1, 2016) (agreeing "that the information obtained by Officer Stickley combined with Chandler's criminal history gave rise to reasonable suspicion that criminal activity may be afoot") (internal quotation marks omitted); *cf. United States v. Fable*, No. 3:18-CR-00003 (JCH), 2018 WL 3727346, at *6 (D. Conn. July 24, 2018) (explaining, in the stop and frisk context, that "[w]hile the Second Circuit has not ruled on whether a criminal record may form the basis for an officer's reasonable suspicion that an individual is armed and dangerous, other circuits have held that, while a criminal record may contribute to an officer's reasonable suspicion, it generally may not serve as the sole grounds for a frisk").

The Defendant argues that because there are so many legitimate uses of a smartphone, her mere possession of one was not, in and of itself, suspicious. She further argues that "even assuming

that the officer had reason to suspect that the phone here was itself contraband, the suspicion that Ms. Gschlecht had a phone did not, without more, provide the probation officer with meaningful specific and concrete grounds for suspicion regarding the *contents* of the phone." (Def.'s Reply at 3.) Upon consideration of "the totality of the circumstances," *e.g.*, *Knights*, 534 U.S. at 118, the Court disagrees. The Probation Officers' knowledge of the Defendant's criminal conviction for possession of child pornography and the probation conditions discussed above, alongside their subjective understanding that she was not authorized to possess a smartphone in particular, combined with actually seeing her in possession of a smartphone—itself a violation of her probation—gave rise to reasonable suspicion to justify not only the seizure but the search as well. *Cf. United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) ("[O]nce she found the machete, [the parole officer] had reasonable suspicion to conduct a further search for additional contraband, assuming *arguendo* that reasonable suspicion was even needed when Massey had already consented to such a search as a condition of obtaining parole"); *United States v. Justiniano*, 401 Fed. App'x 595, 597 (2d Cir. 2010) (summary order) ("'Assuming *arguendo* that reasonable suspicion was even needed when [Justiniano] had already consented to such a search as a condition of obtaining parole,' the clear parole violations observed by the officers here upon entering Justiniano's residence provided sufficient 'reasonable suspicion to conduct a further search for additional contraband'") (quoting *Massey*, 461 F.3d at 179) (internal citation omitted)); *see also Harrison*, 2016 WL 11481716, at *7 ("Once discovering the firearm, the possession of which was, in and of itself, illegal and yet another violation of Defendant's release conditions, . . . the probation officers had additional reasonable suspicion to conduct a more exhaustive search of the remainder of Defendant's apartment and his vehicle") (citing, *inter alia*, *Massey*, 461 F.3d at 179).

In addition, although not necessary to a finding of reasonable suspicion, the Probation Officers observed that Gschlecht initially denied, and later admitted, that the smartphone belonged

to her. This dishonest and evasive response when confronted about the phone also contributes to reasonable suspicion to search the phone. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *accord Harrison*, 2016 WL 11481716, at *6 ("While no single factor is dispositive in determining reasonable suspicion, courts have sometimes focused on certain factors that are especially probative, including a suspect's[] lies and false information; implausible, conflicting, evasive or unresponsive answers; and nervous behavior or demeanor.") (quoting *United States v. Coulombe*, 06-CR-343 (GLS), 2007 WL 4192005, at *5 (N.D.N.Y. Nov. 26, 2007)) (brackets omitted).

For all of these reasons, upon seeing the Defendant in possession of an unauthorized smartphone, the Probation Officers had reasonable suspicion to seize it and to inspect its contents. Because the warrantless search was "supported by reasonable suspicion and authorized by a condition of probation," the Court accordingly concludes that it "was reasonable within the meaning of the Fourth Amendment." *Knights*, 534 U.S. at 122.

**Conclusion**

For the foregoing reasons the Defendant's motion to suppress is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of April 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE